UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY W. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02384-JMS-MPB |
| | ) | |
| CORIZON HEALTH, | ) | |
| MICHAEL E. PERSON, | ) | |
| APN/NP BARBARA A. BRUBAKER, | ) | |
| M.D. CHRISTOPHER S. NELSON, | ) | |
| NP/RN DEBRA L. PERKINS, | ) | |
| KATRINA CLARKSON as Personal | ) | |
| Representative of the Estate of John B. Clarkson, | ) | |
| M.D., | ) | |
| STEVEN CLARKSON as Personal Representative | ) | |
| of the Estate of John B. Clarkson, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment,
Denying Plaintiff's Motion for Appointment of an Expert,
and Denying Plaintiff's Motion for Summary Judgment**

### I. Introduction

Plaintiff Anthony W. Taylor is a prison inmate in the custody of the Indiana Department

of Correction (IDOC). Mr. Taylor suffers from chronic kidney disease (CKD), which he contends

has worsened due to Defendants' deliberate indifference to his serious medical needs. He filed this

42 U.S.C. § 1983 action against Michael E. Person, M.D.; Barbara A. Brubaker, N.P.; Christopher

S. Nelson, M.D.; Debra L. Perkins, N.P.; and the Estate of John B. Clarkson, M.D., by his personal

representatives Katrina Clarkson and Steven Clarkson, (the Individual Defendants) and Corizon,

LLC, (Corizon) a company that had contracted with the IDOC to provide medical services to

Indiana inmates. The Individual Defendants are medical professionals and employees of Corizon.

Dr. Clarkson died before this action was filed, and Mr. Taylor elected to proceed against his estate.

The estate appears through Dr. Clarkson's personal representatives, Katrina Clarkson and Steven Clarkson.

Mr. Taylor, the Individual Defendants, and Defendant Corizon each move for summary judgment contending there is no genuine issue of material fact and they are each entitled to judgment on plaintiff's claims. These cross-motions have been fully briefed and are ready for decision.

Mr. Taylor contends that his CKD has worsened because of Corizon's inadequate system for treating offenders. He also contends that the Individual Defendants have denied him medication and timely evaluation of his medical conditions, and that Corizon has failed to properly "administrate medical services," failed to adequately staff its obligation to provide medical services, and failed to effectively supervise the provision of medical services. Without articulating specific dates, Mr. Taylor contends that he has long complained of pain in his right abdomen, swollen lumps under his skin, including in his feet and groin area, boils under his arms, needle-like pain in his hands, and other pain. He contends that an x-ray revealed a mass of some kind in his abdomen. To this date, he alleges, the mass has not been identified, and his various painful conditions – which he attributes to the CKD – have not been treated or alleviated.

Defendants contend that some of Mr. Taylor's claims are barred by the Indiana statute of limitations for injury lawsuits, that the two Individual Defendants named in this lawsuit were not deliberately indifferent to Mr. Taylor's serious medical needs, and that there is no evidence that Corizon's policies were deliberately indifferent to Mr. Taylor's serious medical needs. Mr. Taylor also contends he is entitled to summary judgment. He has submitted several filings in opposition to Defendants' motion and in support of his own motion.

Before discussing the record, the Court notes the summary judgment legal standards.

## II. Summary Judgment Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir.

2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

Finally, once a movant for summary judgment has presented evidence showing entitlement to judgment and no genuine issue of material fact, the non-movant cannot simply rely on the allegations in the complaint. The non-movant must come forward with evidence to counter the movant's showing. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

### III. The Summary Judgment Record

Defendants moved for summary judgment on August 16, 2018. Dkt. 48. Their motion is supported by the sworn declarations of Defendants Dr. Nelson, Nurse Practitioner (NP) Perkins,

NP Brubaker, Dr. Person, and an expert witness Dr. Ippel. Also submitted are the relevant medical records of Mr. Taylor, authenticated by Dr. Ippel in his declaration. Dkts. 49-3 & 49-2.

Mr. Taylor filed a response in opposition to Defendants' motion for summary judgment. Dkt. 69. In considering Mr. Taylor's opposition to Defendants' motion, the Court will also consider the allegations made in Mr. Taylor's verified complaint as equivalent to an affidavit. *See* 28 U.S.C. § 1746; *Devbrow v. Gallegos*, 735 F.3d 584 (7th Cir. 2013); *Hart v. Hairston*, 343 F.3d 762, 765 (7th Cir. 1996).

Before he responded in opposition to Defendants' motion for summary judgment, Mr. Taylor filed a verified motion for summary judgment. Dkt. 61. The brief in support of his motion contains arguments in opposition to Defendants' motion. Dkt. 62. Mr. Taylor submitted separate filings entitled "Statement of Disputed Factual Issues" and "Statement of Undisputed Facts." Dkts. 63 & 64. Neither filing contains assertions of fact relevant to the viable issues in this lawsuit. Mr. Taylor also submitted his medical records and verified their authenticity under oath. Dkt. 66. These records are largely duplicative of the medical records submitted by Defendants.

Before discussing the relevant facts distilled from the summary judgment record, the Court first notes that this lawsuit was filed on July 13, 2017. Actions brought pursuant to 42 U.S.C. § 1983 are governed by the state laws in the district in which the claims are brought. *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013). In Indiana, the applicable statute of limitations period is two years. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Ind. Code § 34-11-2-4. Therefore, in assessing the facts, the Court is most concerned with the allegations against the Defendants for claims occurring in the two-year period between July 13, 2015 and July 13, 2017.

# IV. Facts of the Case

The following factual background is set forth pursuant to the standard discussed above in Section II in connection with parties' Motions for Summary Judgment. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.      Chronic Kidney Disease

The parties agree that Mr. Taylor suffers from CKD and that it is a serious medical need. CKD results in a gradual loss of kidney function over time. Dr. Bruce Ippel's declaration states that the treatment of the disease primarily involves monitoring the disease and reducing complications to slow the disease's progression. There is no specific medication to treat CKD, but medications to control complications such as high blood pressure, high cholesterol, anemia, and edema are useful to slow the progression. Maintaining a healthy lifestyle also helps slow the progression of CKD. Exercising, restricting salt intake, and avoiding over-the-counter non-steroidal anti-inflammatory medications are recommended for someone with CKD. Mr. Taylor was diagnosed with CKD on January 7, 2012.

Two measures of kidney function are the estimated glomerular filtration rate (eGFR) and the creatinine level. A normal level of creatinine in adult males is between 0.6 and 1.2 milligrams per deciliter. CKD is measured in five stages. A patient with stage three CKD, like Mr. Taylor, may have an eGFR measuring between 30 and 59.

### B.     The Medical Records

The medical records submitted by Mr. Taylor and Defendants show the following course of treatment sought by Mr. Taylor and provided by the Individual Defendants. In light of Mr. Taylor's arguments, the Court will discuss some of the medical records before July 13, 2015, and after the filing of this lawsuit on July 13, 2017.

On March 2, 2015, Mr. Taylor's eGFR level was tested at 58 and his creatinine at 1.52. The creatinine level was a slight improvement over the results from previous tests. In July 2015, Mr. Taylor's eGFR and creatinine levels were "stable." In December 2015, Mr. Taylor's eGFR and creatinine levels were 51 and 1.71, respectively, and in July 2016, the levels were reported as the same. In January 2017, Mr. Taylor's eGFR and creatinine levels were 53 and 1.63, respectively.

Dr. John Clarkson, whose estate is a defendant in this action, saw Mr. Taylor one time, on November 3, 2013, and was not involved in any of Mr. Taylor's treatment thereafter. Dr. Clarkson noted Mr. Taylor's CKD and conducted an examination. He noted that Mr. Taylor was well nourished and well developed and had no abnormalities. Dr. Clarkson discussed Mr. Taylor's condition with him, reassured him, provided him patient education, ordered a routine urinalysis, and scheduled Mr. Taylor for another chronic care visit in three months. Dr. Clarkson had no further involvement with Mr. Taylor.

Defendant Dr. Christopher Nelson saw Mr. Taylor one time, on March 16, 2014, and likewise was not involved in Mr. Taylor's treatment after that date. Dr. Nelson noted Mr. Taylor's CKD and conducted a physical examination. No abnormalities were noted. He provided patient education and scheduled a chronic care visit in three months. Dr. Nelson had no further involvement with Mr. Taylor.

Defendant Nurse Practitioner Debra Perkins saw Mr. Taylor two times for chronic care visits – on May 30, 2014, and November 21, 2014. At the first visit, her records note that Mr. Taylor's CKD "symptoms are reported as being moderate. [Mr. Taylor] states the symptoms are fairly controlled." She gave him medication for constipation, ordered laboratory tests, and scheduled the next chronic care visit. At the second visit, she noted that Mr. Taylor did not report any problems and exhibited no abnormalities. Other than scheduling another chronic care visit on February 24, 2015, Nurse Practitioner Perkins was not involved in Mr. Taylor's treatment after the second visit.

Each of the defendant medical providers just discussed provided services to Mr. Taylor before July 13, 2015, and not at any time thereafter.

Defendant NP Barbara Brubaker saw Mr. Taylor one time in the chronic care clinic on July 24, 2015. She noted no abnormalities and noted that Mr. Taylor exhibited no complications of his CKD. NP Brubaker noticed that Mr. Taylor's potassium level was elevated, so she ordered additional laboratory tests. Those tests showed his potassium level had returned to normal. She concluded that Mr. Taylor's CKD was stable and did not warrant a special diet.

Defendant Dr. Michael Person saw Mr. Taylor at his chronic care appointment on November 12, 2015. Dr. Person noted that Mr. Taylor denied a change in urine color, painful or difficult urination, and flank pain. Dr. Person reviewed the July 2015 laboratory reports and noted the CKD was stable. Dr. Person did not see yellow eyes, abnormal lymph nodes, or a knot on the right side of Mr. Taylor's abdomen. He also ordered additional laboratory tests.

Dr. Bruce Ippel, who is not a defendant in this action, saw Mr. Taylor during a chronic care follow-up on May 12, 2017. He noted that Mr. Taylor's creatinine levels had remained stable for a decade and could be congenital. Mr. Taylor reported occasional painful bumps in areas such as

on his arm or groin, and that they became smaller when he cut back on his workouts. Dr. Ippel noted a small Baker's cyst on the back of Mr. Taylor's right knee, but such cysts are caused by knee conditions such as arthritis and are unrelated to CKD. Dr. Ippel treated Mr. Taylor for other conditions unrelated to CKD and counseled him on the importance of staying fit and controlling his high blood pressure in order to not exacerbate the CKD.

On June 9, 2017, laboratory test results for Mr. Taylor indicated a eGFR of 62 and a creatinine level of 1.51. Dr. Kenneth Robertson, who also is not a defendant in this action, saw Mr. Taylor for his chronic care check-up in August 2017. He noted these test results reflected a normal eGFR for Mr. Taylor, and the creatinine had gone down from its 2015 level of 1.7. His BUN level (blood urea nitrogen) was normal at 18. The BUN level, when elevated, can signal decreased kidney function, but Mr. Taylor's BUN level was normal. Dr. Robertson did not order any changes to Mr. Taylor's treatment plan.

On November 2, 2017, almost four months after this lawsuit was filed, Dr. Gerald Bowen, who likewise is not a defendant in this action, saw Mr. Taylor for his chronic care check-up. He noted Mr. Taylor had a 2 centimeter by 2 centimeter mass in the middle of his abdomen, but reported no abdominal or back pain. Mr. Taylor noted that the lower end of his sternum was tender from repeated examinations. Dr. Bowen told Mr. Taylor it was not serious. He did not order any changes to Mr. Taylor's treatment plan.

Mr. Taylor was seen by Nurse Gregory on November 16, 2017, complaining of pain in his right upper abdomen extending around to his lower back. The pain had been ongoing for three to four years and he asked to see a physician about it. Nurse Gregory, another non-defendant, noted that Mr. Taylor's abdomen exhibited normal bowel sounds and that he did not appear to be in distress. She referred Mr. Taylor for a physician visit. Laboratory tests were ordered, including a

urinalysis, with all tests reporting normal. Dr. Platz, another non-defendant, conducted the evaluation and did not order any change to Mr. Taylor's treatment plan.

On April 23, 2018, Mr. Taylor saw NP Dawson, another non-defendant, for his chronic care visit. Mr. Taylor reported abdominal discomfort for the past two years. NP Dawson ordered an abdominal x-ray. The x-ray revealed mild colonic fecal retention but no other abnormalities.

Dr. Robertson met with Mr. Taylor on May 10, 2018, to discuss the x-ray results. The doctor examined Mr. Taylor and noted his abdomen was soft, but that Mr. Taylor reported mild tenderness in his right upper quadrant. He also noted that the edge of Mr. Taylor's liver was palpable. Dr. Robertson requested an ultrasound to assess Mr. Taylor's renal artery flow and gallbladder status. Laboratory test results received on May 23, 2018 indicated Mr. Taylor's eGFR was down to 53 and his creatinine was 1.71. The same test showed Mr. Taylor's liver function was normal.

The ultrasound requested by Dr. Robertson was performed on May 30, 2018. It showed no evidence of significant renal artery stenosis, hydronephrosis, or focal renal abnormality. When Dr. Ippel met with Mr. Taylor to discuss the ultrasound results, Mr. Taylor reported that he had experienced intermittent right upper quadrant pain for more than two years, but during the last two years, the intermittent pain was accompanied by some shooting pain, particularly after he had done crunches.

Dr. Ippel noted Mr. Taylor's mild abdominal tenderness near the middle of his abdomen but opined that it was likely due to mild nerve compression in the thoracic spine. He referred Mr. Taylor for a physical therapy consultation. Dr. Ippel also noted that Mr. Taylor's laboratory test results were stable, and there was no evidence of significant progression of disease.

Dr. Ippel's review of Mr. Taylor's medical records found no reported complaints of dark urine, yellow eyes, painful or swollen lymph nodes, or a knot on his kidney.

## C.     Mr. Taylor's Evidence and Submissions

In his statement of disputed fact issues filed August 16, 2018, Mr. Taylor submits that a fact issue exists concerning whether the mass in his abdomen is causing him pain, whether his blood tests show a higher elevation of measured indicators since last year, whether the mass in his abdomen is caused by his kidney, and whether expert witnesses (Dr. Ippel and Dr. Robertson) gave inconsistent testimony about his x-ray and ultrasound. Dkt. 63.

Mr. Taylor's statement of undisputed facts contains assertions about several interactions with non-defendants in 2018, with Defendants Dr. Person and NP Brubaker in 2018, and with Defendants in 2013 and 2014. The statement includes these assertions concerning defendant NP Brubaker that fall within the two-year statute of limitations period:

> [O]n 7/24/2015 chronic care visit defendant's [sic] Barbara Brubaker state CKD "status stable, negative for abdominal pain." Yet on April 30, 2018, the very first x-ray in my abdominal area found that there is a mass [or] something in that area . . . .

Dkt. 64, ¶ 6.

Finally, and as noted earlier, the Court takes into account Mr. Taylor's assertions made in his verified complaint. Without specifying a date, Mr. Taylor pleaded that he had lately been having "pains on [his] right side, and off and on [he had] been having swollen lumps, boils under my arms, and in my private area, dark urine, yellow eyes, all of which I've complained to medical staff." Dkt. 1, ¶ 17. He continued that "On 11/12/2015 at 9:48 am [c]hronic care visit [he] was seen by Dr. Michael E. Person[.] I complained of the above condition, no treatment was given . . . ." *Id.*, ¶ 18.

**V. Analysis**

**A.      Legal Standard for Eighth Amendment Deliberate Indifference Claims**

Mr. Taylor's claims against the Defendants arise under the Eighth Amendment because at all times relevant to his claims he was a convicted offender. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning that they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc). "[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation and citation omitted). "To infer deliberate indifference on the basis of a

physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861 (7th Cir. 2015) (unpublished) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id*.

### B. Discussion

#### 1. Statute of Limitations

As has been noted above, Mr. Taylor's claims require an assessment of the Indiana two-year statute of limitations for injury actions. Because this lawsuit was filed on July 13, 2017, claims arising before July 13, 2015 are barred by the limitations period. *Serino*, 735 F.3d 588, 590 (7th Cir. 2013) (Section 1983 actions apply the statute of limitations of the state in which the claims are brought); Ind. Code § 34-11-2-4 (defining two-year limitation period for injury actions). Defendants Perkins, Clarkson, and Nelson argue that plaintiff's claims against them are barred by Indiana's statute of limitations.

Dr. Clarkson's only involvement with Mr. Taylor was on November 3, 2013. Mr. Taylor filed this action more than two years after he last saw Dr. Clarkson. Dr. Clarkson ended his

employment with Corizon on January 29, 2014. Similarly, the last time Mr. Taylor saw Dr. Nelson was on March 6, 2014, more than two years before he filed this action. Nurse Practitioner Perkins's last involvement with Mr. Taylor was on February 24, 2015, once again more than two years before this action was filed.

Mr. Taylor did not respond to Defendants' statute of limitations defense, and therefore did not present any argument or evidence to suggest that these Defendants' alleged deliberate indifference was a continuing violation that might somehow permit him to avoid the statute of limitations defense. Given the singular nature of his interactions with them, such an effort would have been unavailing.

Defendants Perkins, Clarkson, and Nelson's uncontested motion for summary judgment on the basis that Mr. Taylor's claims against them are barred by Indiana's statute of limitations, is therefore **granted**.

### 2.     Defendant Dr. Person

Mr. Taylor's claim against Dr. Person concerns his single visit with Dr. Person on November 12, 2015. Mr. Taylor asserted in his verified complaint that he had complained to unspecified medical staff at an unspecified time about having "pains on [his] right side, and off and on [he had] been having swollen lumps, boils under [his] arms, and in [his] private area, dark urine, [and] yellow eyes." Dkt. 1, ¶ 17. He then stated that when he saw Dr. Person on November 12, he complained about the "above conditions" but no treatment was given.

Dr. Person's sworn declaration states that when he saw Mr. Taylor on November 12, 2015, he was aware of Mr. Taylor's CKD, that Mr. Taylor reported that he was stable, took no medications, had no urine changes, and specifically denied a change in urine color, painful or difficult urination, or flank pain. Dr. Person states that Mr. Taylor's blood pressure was normal

and his cholesterol level was within the normal range. Mr. Taylor did not report any pain. Dkt. 49-3, pp. 18-19. July 2015 laboratory test results showed that Mr. Taylor's CKD was stable. A physical examination did not reveal any mass in Mr. Taylor's abdomen. Dr. Person scheduled Mr. Taylor for another chronic care visit in three months. *Id.*

In his responses to Dr. Person's evidence, Mr. Taylor acknowledges that Dr. Person wrote that he did not see these symptoms. Dkt. 64, ¶ 3. Mr. Taylor attempts to rebut Dr. Person's evidence, arguing that the x-ray taken on April 30, 2018, and his visit with Dr. Robertson on May 10, 2018, resulting in a referral for an ultrasound, revealed a mass of some kind. But this evidence is irrelevant because the 2018 x-ray and assessment were performed two and a half years after Dr. Person's examination. *Id.* In his brief in support of his own motion for summary judgment, Mr. Taylor discusses Dr. Person in one paragraph. He asserts that he told Dr. Person about abdominal and right middle lower back pain and having a mass in his kidney area, but that Dr. Person told him the knot was possibly caused by gas, and although doing nothing for pain, he said he would order another blood test. Dkt. 62, p. 6.

The Court's focus is on Dr. Person's actions taken, or not taken, during the visit on November 12, 2015, some two-and-a-half years before the visit with Dr. Robertson, the x-ray, and the ultrasound. On this record, the 2018 x-ray and ultrasound have no bearing on whether Dr. Person, on November 12, 2015, was deliberately indifferent to Mr. Person's serious medical needs.

Taking Mr. Taylor's statements as true, no finder of fact could conclude that Dr. Person's conduct was equivalent to an "intentional or criminally reckless" indifference, such that he "must have known that [Mr. Taylor] was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Farnham*, 394

F.3d at 478 (internal quotation omitted). Dr. Person was aware of Mr. Taylor's CKD, was alert for complications, ordered laboratory tests, and scheduled another chronic care visit to monitor the condition. Even if Mr. Taylor had reported the symptoms noted in his Complaint to Dr. Person, Dr. Person's response fails to meet the standard of deliberate indifference.

Mr. Taylor offers no evidence of an alternate, or even preferred, treatment for his CKD that any of the medical providers who saw him, including Dr. Person, should have followed instead of the monitoring of his condition and reducing conditions that could aggravate it. While Mr. Taylor states that he was never provided medication or a special diet, he submits no evidence that medication or a special diet was a medically appropriate treatment.

As far as Mr. Taylor's assertion that Dr. Person did not treat his pain, taking that contention for purposes of summary judgment as true, no finder of fact could find that omission as equivalent to an "intentional or criminally reckless" indifference under the standard discussed in *Farnham*. 394 F.3d at 478. Mr. Taylor does not describe the level of his pain in his complaint or summary judgment filings, nor state what treatment he should have received.

None of the medical records that Dr. Person reviewed about Mr. Taylor's medical history, which informed Dr. Person of Mr. Taylor's CKD treatments and laboratory reports, mention complaints of pain. Dkts. 49-3 & 66. The medical records subsequent to the visit with Dr. Person do not mention untreated pain. Stage 3 CKD treatment also calls for avoiding certain non-narcotic pain medications (non-steroidal anti-inflammatory drugs), and no evidence suggests that Mr. Taylor's pain was of such severity to require narcotics. Dkt. 49-2, ¶ 8 (Declaration of Dr. Bruce Ippel). Dr. Person also believed Mr. Taylor simply had gas, but he did order blood tests and scheduled the follow-up visit.

No finder of fact could find that Dr. Person's treatment of Mr. Taylor was deliberately indifferent to his serious medical needs. At most, Dr. Person's failure to do something about Mr. Person's alleged report of pain, in light of the CKD course of treatment, sounds in negligence or medical malpractice, which are not deliberate indifference. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016); *Petties*, 836 F.3d at 728.

Dr. Person's motion for summary judgment is **granted**.

### 3. NP Brubaker

Nurse Practitioner Brubaker saw Mr. Taylor one time, on July 24, 2015. Dkt. 49-6 (Declaration of Barbara Brubaker, NP). At that visit she acknowledged Mr. Taylor's CKD, noted it was stable, and noticed that he did not exhibit any signs of complications such as high blood pressure. She did not notice swollen lymph nodes, boils, yellow eyes, or a knot in Mr. Taylor's abdomen. NP Brubaker contends that Mr. Taylor did not report to her any symptoms that needed attention. She was alert to his previous laboratory test showing a slightly elevated potassium level, and she ordered another test to check on that level. All of his test results indicated to her that the CKD was stable and there was no call for other treatment. Dkt. 49-3, pp. 16-17.

Mr. Taylor contends that he did, in fact, tell NP Brubaker about pain in his abdomen area and various lumps or knots that appeared in different places in his body. As to the pain report, he does not indicate that his report to NP Brubaker was about present pain, and in context it was more likely about prior instances of sporadic pain. And he acknowledges such complaints do not appear in the medical records, implying that NP Brubaker did not record the complaint in her report. Dkt. 62, p. 6 (Mr. Taylor's brief in support of summary judgment).

Taking Mr. Taylor's contention as true for summary judgment purposes, the Court's focus is on what NP Brubaker did, or did not do, during this chronic care visit, and not what occurred in

subsequent examinations. She conducted a physical examination, noting that Mr. Taylor's abdomen was not tender. She detected no abnormalities. Dkt. 49-6, ¶ 8. Mr. Taylor does not dispute NP Brubaker's testimony about the examination.

No reasonable finder of fact could conclude that NP Brubaker's conduct was equivalent to an "intentional or criminally reckless" indifference, such that she "must have known that [Mr. Taylor] was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though [she] could have easily done so." *Farnham*, 394 F.3d at 478 (internal quotation omitted). To the contrary, this record demonstrates that NP Brubaker was aware of Mr. Taylor's CKD, was alert for complications, and that because she was aware of his elevated potassium levels, she ordered follow-up testing to check the potassium level. If Mr. Taylor reported lumps or knots on Mr. Taylor, NP Brubaker did not observe them, thus any failure to treat that condition cannot be deliberate indifference.

Concerning Mr. Taylor's pain complaints, he provides no evidence that his complaint to NP Brubaker was about present pain, or pain he was suffering at the time of her examination. Indeed, in his statement of undisputed facts, Mr. Taylor acknowledges NP Brubaker's testimony that Mr. Taylor was "negative for abdominal pain," and counters it with the same argument he presented in addressing Dr. Person's declaration – that approximately two to three years later, in 2018, an x-ray and ultrasound found a mass in his abdomen. Dkt. 64, ¶ 6. Mr. Taylor also does not assert that he asked for, or needed, pain medication. His implied assertion is that NP Brubaker failed to treat the pain.

But even taking Mr. Taylor's assertions as true that he reported an unspecified level of abdominal pain to NP Brubaker, on this record no reasonable finder of fact could conclude that NP Brubaker's treatment was equivalent to an "intentional or criminally reckless" indifference,

such that [she] "must have known that [Mr. Taylor] was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Farnham*, 394 F.3d at 478 (internal quotation omitted).

NP Brubaker's motion for summary judgment is **granted**.

### 4. Corizon

Mr. Taylor's claims against Corizon are premised solely on the limited admissible evidence buried in the contentions of his complaint that Corizon failed to properly staff the medical providers in the Department of Correction and, therefore, his CKD has not been properly diagnosed and treated. Mr. Taylor did not offer additional evidence, nor argument, to support his claim against Corizon.

Corizon is treated, for Section 1983 purposes, as a municipality. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (holding that a corporation that contracted with a jail to provide health services is "treated the same as [a] municipalit[y] for liability purposes in a § 1983 action"). Because the Court has found that none of the Individual Defendants were deliberately indifferent to Mr. Taylor's condition, it is not necessary to address the doctrine of respondeat superior, which in any event does not apply. What Mr. Taylor is required to show is that a Corizon policy was the "direct cause" of or "moving force" behind a constitutional injury. *Pyles v. Fahim*, 771 F.3d 403, 409-10 (7th Cir. 2014). The Court has found no underlying constitutional violation, nor has Mr. Taylor identified a Corizon policy at issue.

Corizon's motion for summary judgment is therefore **granted**.

For the reasons explained above, Defendants' joint motion for summary judgment, dkt. [48], is **granted**.

## VI. Plaintiff's Motions

Mr. Taylor's motion for summary judgment is supported by a few specific statements contained in his verified complaint and argument consisting of numerous conclusory statements. Much of Mr. Taylor's motion is better construed as an argument in opposition to Defendants' motion for summary judgment. None of the disputed facts, which the Court has discussed at length in this Order, create a genuine issue of material fact that prevents the grant of summary judgment for Defendants, and none demonstrate that Mr. Taylor is entitled to summary judgment. Accordingly, Mr. Taylor's motion for summary judgment, dkt. [61], is **denied**.

Finally, Mr. Taylor's motion for a court-appointed expert, dkt. [67], is **denied**. Where the medical record is not meaningfully contradicted, where care for Mr. Taylor was regular and meaningful, such that no reasonable jury could rule against Defendants, the appointment of an expert is unnecessary. *Turner v. Cox*, 569 Fed. App'x 463, 468 (7th Cir. 2014) (citing *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997). Additionally, Rule 706 of the Federal Rules of Evidence permits the Court to appoint a neutral expert witness "that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). The purpose of this rule is to allow the Court to obtain neutral expert testimony when "scientific or specialized knowledge will help the court to understand the evidence or decide a disputed fact." *Elcock v. Davidson*, 561 Fed. Appx. 519, 524 (7th Cir. 2014). The Court, however, "need not appoint an expert for a party's own benefit or to explain symptoms that can be understood by a layperson." *Turner v. Cox*, 569 Fed. Appx. 463, 468 (7th Cir. 2014) (citations omitted).

The issue addressed here was whether Dr. Person or NP Brubaker were deliberately indifferent to Mr. Taylor's serious medical needs, and whether Corizon had a policy that allowed

deliberate indifference to occur. An expert witness is not needed to explain these issues to the Court.

## VII. Conclusion

The Court feels compelled to note that Mr. Taylor's chief concerns are abdominal pain reported after the filing of this lawsuit in November 2017, and a mass in his abdomen addressed in early 2018. Those conditions arose after the filing of this action and have not been shown to be connected to the CKD. The mass was addressed by Dr. Robertson, who is not a defendant in this action, on May 10, 2018, ten months after this action was filed. Mr. Taylor also relies heavily on matters that involve persons not named as defendants. *See* dkt. 62-2 (affidavit of Mr. Taylor) (discussing medical providers not named in this lawsuit). This lawsuit simply does not include claims related to those conditions or their treatment.

The Court finds that Defendants' motion for summary judgment, dkt. [48], is supported by law and facts, and is **granted**. Final judgment consistent with this Order shall now enter. Mr. Taylor's motion for summary judgment, dkt. [61], and motion for appointment of an expert witness, dkt. [67] are **denied**. Final judgment consistent with this Order shall now enter.

**IT IS SO ORDERED**.


Date: 3/28/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Anthony W Taylor
910720
New Castle Correctional Facility - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, IN 47362

Electronically Registered Counsel